IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AGROPEX INTERNATIONAL INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 1:19-cv-01232-JMC |
| ACCESS WORLD (USA) LLC | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Agropex International Inc. ("Agropex"), advances several claims against Defendant, Access World (USA) LLC ("Access World"), arising out of the allegedly wrongful storage and handling of 38,500 metric tons of agricultural products. Pursuant to Standing Order 2018-4 and 28 U.S.C. § 636(c), the case was assigned directly to a magistrate judge and the parties consented to proceed before that magistrate judge. (ECF Nos. 14, 17). Now pending before the Court is Defendant's Motion to Dismiss, (ECF No. 19), and Plaintiff's Motion for Leave to File Sur-reply. (ECF No. 22). The Court has reviewed all the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Defendant's Motion is **GRANTED in part** and **DENIED in part**, and Plaintiff's Motion is **DENIED**.

**I.    BACKGROUND**

All facts below are either undisputed or in a light most favorable to Agropex. In 2017, Agropex contracted with non-party, Global Natural, LLC, to sell 21,000 metric tons of corn and 17,500 metric tons soya (the "Cargo"). (ECF No. 1 at ¶¶ 7-9). Global Natural then contracted with Defendant Access World to take delivery and store the Cargo until sold. (*Id.* at ¶ 9). After

1

delivery another third party performed an inspection and reported that all of the Cargo was in good condition as of April 2017.  (*Id.* at ¶¶ 10-11).

Issues began almost immediately after delivery.  First, questions arose as to who would be paying storage fees to Access World.  (*Id.* at ¶ 12).  After being informed that Agropex owned the Cargo, Access World turned to it for payment.  (*Id.*).  Next, an issue arose as to whether the Cargo was "properly certified as 'organic'", causing delay in shipment.  (*Id.* at ¶ 13).  Last, on June 9, 2017, Agropex learned from "a third-party" that the Cargo needed drying, indicating that it had been exposed to moisture, counter industry protocol, while in Access World's storage facility.  (*Id.* at ¶¶ 14-16).

On July 11, 2017, Agropex requested that the Cargo be made available for a buyer.  (*Id.* at ¶ 17).  Access World, however, refused to release the product without Global Natural's consent.  (*Id.* at ¶ 19).  Agropex alleges that Access World refused to release the Cargo despite full payment of all storage fees and knowledge that Global Natural had ceased operations or was in the process of ceasing operations.  (*Id.* at ¶ 22).  On July 21, 2017, Access World informed Agropex that it would need to pay additional "loading fees" before the Cargo could be release.  (*Id.* at ¶ 24).  On November 2, 2017, Access World told Agropex that some of the Cargo had been damaged.  (*Id.* at ¶ 25).  Although the date of release is unclear, Agropex ultimately paid $2,109,219.64 for the handling, storage, transportation, and disposal of the Cargo.  (*Id.* at ¶ 35).  The Cargo was only released after full payment.  (*Id.* at ¶ 35).  Agropex maintains that none of the fees were proper, and that it only paid the amount believing that the Cargo was undamaged, or alternatively, that Access World would assume the cost of any damage to the Cargo.  (*Id.* at 37).  In total, Agropex alleges more than $3.5 million in damages from a combination of wrongfully charged fees related

to the storage of the Cargo, and lost revenue from the damaged, destroyed, and unaccounted for Cargo. (*Id.* at ¶¶ 45-52).

Notably, this is not the first suit to arise from this Cargo. On June 29, 2017, while the Cargo was still within an Access World facility, Global Natural filed suit against Agropex in this Court. *See Global Natural, LLC v. Agropex Int'l, Inc. et al,* Case No. 1:17-cv-01799-GLR (D. Md. 2017). The prior suit concerned, among other things, the proper certification of organics and alleged that the same Cargo was fraudulently classified. After filing the Complaint, it appears that Global Natural ceased operations, causing their counsel to file a motion for leave to withdraw. After the motion was granted, Global Natural was given thirty (30) days to obtain new counsel. They did not. Agropex moved to dismiss the complaint and for default judgment on its counter-claims, including claims arising from the storage and damage of the Cargo in question. On August 23, 2018, the Court ultimately granted the motion and entered judgment in Agropex's favor against Global Natural for $9,624,454.14 in damages plus post-judgment interest.

On April 24, 2019, Agropex filed suit against Access World alleging seven counts: (I) breach of contract; (II) negligence; (III) conversion; (IV) trespass to chattels; (V) fraudulent misrepresentation; (VI) fraudulent concealment; and (VII) negligent misrepresentation. (ECF No. 1 at ¶¶ 53-92). Access World now moves to dismiss many of these counts. (ECF No. 19).

## II. STANDARD OF REVIEW

To survive the challenge of a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint, however, must not rely on bald allegations, as its "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S at 555. Stated another way, Plaintiffs may not "rely on naked assertions, speculation, or legal conclusions." *Trotter v. Kennedy Krieger Inst., Inc.*, No. CIV. 11-3422-JKB, 2012 WL 3638778, at *2 (D. Md. Aug. 22, 2012) (internal citations omitted). "If after viewing the complaint in this light the court cannot infer more than the mere possibility of misconduct, then the motion should be granted and the complaint dismissed. *Id.* (internal citations omitted).

## III. DISCUSSION

Access World argues that Agropex's Complaint is critically deficient in a few respects. First, it is asserts that Plaintiff's fraud-based counts do not meet the pleading requirements of Federal Rule 9 nor articulate an actual misrepresentation. Second, Access World argues that some tort-based counts fail as a matter of law because a necessary duty in tort does not exist. Third, Access World argues that the claim of conversion must fail as a matter of law because of the underlying contract. Finally, Access World argues that Agropex, by incorporating all prior allegations into each of its claims, violates the requirement to set forth each claim for relief separately.

For the reasons discussed below, the Court agrees with Access World in part and will dismiss counts II, V, VI, and VII for failure to state a claim. This dismissal will be without prejudice so that Plaintiff may file an amended complaint.

### A. Count V – Fraudulent Misrepresentation and Count VI – Fraudulent Concealment

Plaintiff advances two counts colored in fraud that require particularity: fraudulent misrepresentation and fraudulent concealment. To state a claim for fraudulent misrepresentation,

4

a plaintiff must allege "(1) that the defendant made a false representation to the plaintiff (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 919 (D. Md. 2012).

The elements for a claim of fraudulent concealment are: (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment. *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 820 (D. Md. 2005). Both fraudulent misrepresentation and fraudulent concealment are subject to the heightened pleading standard of Rule 9(b). See *Hill*, 383 F. Supp. 2d 814, 822-23.

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Further, this "heightened standard" means that "a plaintiff must plead with particularity the circumstances constituting fraud, "includ[ing] the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, No. CIV. WDQ-13-0040, 2014 WL 346630, at *8 (D. Md. Jan. 29, 2014) (citing Fed. R. Civ. P. 9).

The same narrative anchors each of Plaintiff's fraud-based counts — Access World fraudulently misrepresented the condition of the Cargo to continue billing Agropex. (ECF No. 1 at ¶¶ 74-78, 80-85, and 87-92). In support of this scheme Agropex details three occurrences. One,

5

that "[o]n or about July 12, 2017, Access Work, through counsel, admitted that it would be responsible for any damage to" the Cargo. (*Id.* at ¶ 23). Two, that "[o]n July 21, 2017, Access World, through counsel, admitted that the [Cargo] belongs to Agropex, and that Agropex had paid all outstanding and applicable fees, but then required Agropex to pay additional "loading fees" related to the handling of the [Cargo]." (*Id.* at ¶ 24). Three, that "[o]n November 2, 2017, . . . Access World admitted that a portion of the [Cargo] had been damaged." (*Id.* at ¶ 25).

Defendant argues that these specific allegations, either alone or in combination with the others within the Complaint, fail to articulate an actual misrepresentation, let alone are plead with the required particularity. Plaintiff disagrees and argues that the Complaint sufficiently and properly alleges fraud. As the Court understands it, Agropex contracted with Global Natural to sell the Cargo. Global Natural then contracted with Access World to store the Cargo. Only a few months after Global Nature sued Agropex it ceased operations.[1] Agropex attempted to regain possession of the Cargo but Access World refused absent Global Nature's consent and/or the payment of all outstanding fees associated with the storage. No allegations as to who actually was responsible for the payment of fees have been made. At no time before November 2, 2017, does Agropex ask about the condition of the Cargo, despite allegedly hearing a rumor from an unnamed third-party that the Cargo needed to dry. Once all fees were paid, Access World released the Cargo Agropex.

Notably missing is any representation concerning the condition of the Cargo before November 2, 2017. Although implied throughout the Complaint, no such communication is alleged, let alone with particularity. (*See* ECF No. 1 at ¶¶ 25, 29, 33, 37). Each fraud-based count requires Defendant to have misrepresented a material fact. As read, the Complaint alleges no

---

[1] The exact nature of Global Natural's ceasing of operations is unclear. The Court does not know whether it liquidated, declared bankruptcy, or dissolved.

6

actual misrepresentation. Without such a representation there cannot be the subsequent reliance necessary to state a prima facie claim of fraudulent misrepresentation. Similarly, the Complaint fails to allege fraudulent concealment with particularity leaving the Court to guess what was concealed, by whom, how, and why.[2] Without a misrepresentation, the most egregious scenario possible is one where Defendant may have broken a promise to pay for any damage to the Cargo or may have breached some other duty owed to Plaintiff.[3] Absence particularity and an actual misrepresentation, counts V and VI must be dismissed.

### B. Count II – Negligence and Count VII – Negligent Misrepresentation.

Defendant next argues that Plaintiff fails to allege or sustain an actual duty in tort to maintain other counts within the Complaint. Specifically, Defendants argues that because no duty exists, two additional counts fail as a matter of law: count II – negligence and count VII - negligent misrepresentation. Plaintiff argues that the circumstances have all the makings for a duty in tort to exists. First, Plaintiff asserts that a duty to exercise reasonable care over the Cargo existed. Second, Plaintiff cites an exception to the economic loss rule and § 552 of the Restatement (Second) of Torts (1965) for the existence of a duty. Third, Plaintiff argues that it is a third-party beneficiary and thus is owed a duty arising out of the underlying contract. None of these arguments is persuasive.

Although presented as separate arguments, all three theories fall under the same legal analysis. Before undertaking that analysis, some foundation is needed. It is undisputed that a contract exists governing the storage of the Cargo. This contract was executed between Global Natural and Access World. Further, it is presumed that Agropex had a written agreement with

---

[2] This count also fails because, as discussed below, Defendant owed Plaintiff no duty of disclosure as alleged and necessary to sustain the count.

[3] Defendant's motion does not challenge Plaintiff's count for breach of contract, which after this memorandum opinion and order, will be the only remaining avenue of a duty for which Defendant could be held liable.

Global Natural. Within the Complaint, Plaintiff's count I for breach of contract alleges that Access World "had a contractual obligation to store [the Cargo] in a manner consistent with industry standards and prevent it from being damaged." (ECF No 1 at ¶ 54). It also alleges that Access World breached this contract by failing to properly store the Cargo and that Agropex is "a party and/or third-party beneficiary" to this contract. (*Id.* at ¶ 55). It alleges that Agropex was billed despite the breach and that damages resulted in an excess of $3.5 million for the fees wrongfully paid and lost profits. (*Id.* at ¶¶ 56-57). Defendant does not challenge that existence of this contract nor does it challenge the validity of Plaintiff's count I. These facts when viewed under the following law and with an understanding that all of the counts alleged arise from the same circumstances, lead to the ultimate conclusion that Defendant never owed Plaintiff a duty in tort that can be sued upon now.

In Maryland, the existence of a legal duty is a question of law to be decided by the court. *Doe v. Pharmacia & Upjohn Co., Inc.*, 388 Md. 407, 414 (2005). Without a duty of care, there can be no liability through a negligence-based cause of action. *Walpert, Smullian & Blumenthal, P.A. v. Katz, et al.*, 361 Md. 645, 655 (2000). Plaintiff argues that Defendant owed it "a duty to keep [the Cargo] free from damage" and "a duty to inform Agropex of [the Cargo's] condition." (ECF No. 1 at ¶¶ 59, 60, 81, 88). In alleging those duties and only economic loss, Plaintiff triggers the economic loss rule. *See Farmers Bank of Md. v. Chicago Title Ins. Co.*, 163 Md. App. 158, 172 (2005). The economic loss rule prevents the imposition of tort liability when the failure to exercise due care only creates the risk of economic loss, unless an "intimate nexus" exists between the parties. *Jacques v. First National Bank of Maryland*, 307 Md. 527, 534-35 (1986). Plaintiff, however, misapplies the rule.

    1. **A Duty Through *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 333 Md. 245 (1994)**

Plaintiff first argues that a duty to exercise reasonable care over the Cargo exists through citation to *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 333 Md. 245 (1994). This Court disagrees. The *Westinghouse* Court found a duty in tort to exist because the damages alleged were property damages — for the replacement of the livestock killed — not strictly economic losses as alleged here. In this the economic loss rule was never even triggered, and the lower court's dismissal based on finding no duty in tort was reversed. Unlike *Westinghouse*, Plaintiff only alleges economic loss and therefore must contend with the economic loss rule.

**2. The Equivalent of Privity and § 552 of the Restatement (Second) of Torts (1965)**

Plaintiff's other arguments acknowledge the barrier imposed by the economic loss rule, but contends that an "intimate nexus" exists, and therefore permits a duty in tort to exist, either through the equivalent of contractual privity and § 552 of the Restatement (Second) of Torts (1965) or by way of Plaintiff being a third-party beneficiary. The "intimate nexus" exception requires "contractual privity or its equivalent." *Jacques*, 307 Md. at 534-35. "[T]he rationale underlying the requirement of privity or its equivalent as a condition of liability for negligent conduct, including negligent misrepresentations, resulting in economic damages [is] to avoid 'liability in an indeterminate amount for an indeterminate time to an indeterminate class.'" *Walpert*, 361 Md. at 671 (citation omitted). One recognized "privity equivalent" and duty is § 552 of the Restatement (Second) of Torts (1965), which, in relevant part, provides "that (1) a person who, in the course of its business, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on that information, if the person fails to exercise reasonable care or competence in obtaining or communicating the information, and (2) the liability of a person who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty

9

is created, in any of the transactions in which it is intended to protect them." *Swinson v. Lords Landing Vill. Condo.*, 360 Md. 462, 477 (2000).

Nonetheless, Agropex cites to no case, and this Court is aware of none, that has found such "a public duty to give the information" that would satisfy § 552 and form an "intimate nexus" between the owner of property and a holder. The *Jacques* Court also considered an additional factor relevant: the "nature of the business of the party upon whom the burden is sought to be imposed." 307 Md. at 541. In *Jacque* the Court found an "intimate nexus" between loan applicants and a bank where "the relationship between these parties . . . left the [applicants] particularly vulnerable and dependent on the Bank's exercise of due care" and "[t]he Bank was well aware of the nature of its obligation." *Id*. at 540–41. In this the Court of Appeals explained that:

> The law generally recognizes a tort duty of care arising from contractual dealings with professionals such as physicians, attorneys, architects, and public accountants. Additionally, we have recognized that in those occupations requiring peculiar skill, a tort duty to act with reasonable care will be imposed on those who hold themselves out as possessing the requisite skill.

*Jacques*, 307 Md. at 541, 515 A.2d at 763 (citations omitted). Along that vein, Maryland courts have found equivalents, and thus duties in tort to act with reasonable care, between "a bank and its client; a title company and a purchaser of real property; and an accounting firm and a third-party investor." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 226 Md. App. 420, 447 (2016), *aff'd*, 451 Md. 600 (2017) (citations omitted). Each circumstance involved professionals, holding themselves out as possessing a peculiar skill, allegedly harming another who reasonably relied upon that skill and could not otherwise limit "their economic risk by defining their respective rights and liabilities contractually." *Id.* at 452. This case stands in stark contrast. No "peculiar skill" is implicated nor were the parties unable to negotiate and limit their

10

economic risks. Rather, Agropex and Access World are sophisticated businesses that both separately contracted with a third sophisticated business, Global Natural.

Moreover, even if the Restatement § 552 analysis was applicable, Agropex failed to allege facts sufficient enough to support the intimate nexus equivalent. As detailed above, Plaintiff failed to show that Access World provided false information and failed to exercise reasonable care, other than the conclusory statements to the contrary. Furthermore, the Court is provided with no underlying source or support for the existence of some "public duty to give information." Thus, Plaintiff has not shown an intimate nexus through an equivalence to privity and thus is still barred by the economic loss rule.

### 3. Third-Party Beneficiary

Last, Plaintiff argues that its status as a third-party beneficiary constitutes an intimate nexus. Even assuming that Plaintiff is a third-party beneficiary, being so does not establish the required nexus. *See Colden v. W. Coast Life Ins. Co*., CIV.A. RDB-12-1691, 2013 WL 1164922, at *6 (D. Md. Mar. 19, 2013). To the contrary, the legal concept of a third-party beneficiary exists to permit suit "*without any* privity of contract." *Parlette v. Parlette*, 88 Md. App. 628, 635-36 (1991) (emphasis added). Even so, being a third-party beneficiary does not create a duty in tort. "A contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis." *Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241, 253 (1999). The "[m]ere failure to perform a contractual duty, without more, is not an actionable tort." *Id.* (quoting *Wilmington Trust Co. v. Clark*, 289 Md. 313, 329 (1981)).

Likewise, Plaintiff fails to show the existence of any independent duty. Without privity or an equivalent, the economic loss rule prevents the imposition of tort liability against Access World.

11

The Court finds that as a matter of law Defendant never owed Plaintiff a duty in tort and thus Defendant's motion to dismiss counts II and VII is granted without prejudice.

**C. Conversion**

In Maryland, conversion "is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 560 (1999). Plaintiff's count III for conversion alleges that the Cargo belonged to Plaintiff, that Defendant "intentionally lost and/or destroyed a portion of" the Cargo, and that Defendant's actions deprived Plaintiff of its possession and use of the Cargo. (ECF No. 1 at ¶¶ 64-67).

Defendant argues that Plaintiff's claim for conversion fails as a matter of law because an underlying contract as to the storage of the Cargo exists. Plaintiff argues that even if there exists a contract between it and Global Natural, it was not between Access World and Agropex and therefore cannot act to bar the cause of conversion.

Under Maryland law the "'mere failure to perform under a contract is not enough' to maintain an action for conversion and 'a positive, tortious act' distinct from the breach of the contract term is indispensable." *Anne Arundel County v. Xerox State & Local Sols., Inc.*, CV JFM-16-00563, 2016 WL 5720705, at *10 (D. Md. Sept. 30, 2016) (quoting *Fink v. Pohlman*, 85 Md. App. 106, 114 (1990)). "Furthermore, even if some deprivation of property rightfully belonging to the plaintiff is alleged, if the deprivation is a direct result of a breach of a contract provision entitling the plaintiff to the property at issue, the deprivation cannot, without an independent act, sustain a cause of action for conversion." *Id.*

While an underlying contract exists, it is not between Plaintiff and Defendant. Its terms and Plaintiff's status under it, be it of a third-party beneficiary or an incidental beneficiary, both

remain a mystery. Until better understood this Court cannot properly determine whether the underlying contract would prevent a claim of conversion. As the Court understands it, if Plaintiff is found to be a third-party beneficiary of the underlying contract and if that contract includes some duty to use reasonable care over the Cargo, then absent an affirmative tortuous act, Plaintiff will not have a viable claim for conversion. Whereas on the other hand, if Plaintiff is not a third-party beneficiary but it is found that Defendant intentionally lost or destroyed some of the Cargo, then a claim for conversion may be appropriate. Accordingly, Defendant's motion to dismiss count III is denied.

**D. Separate Causes of Action**

Last, Defendant argues that Plaintiff's complaint should be dismissed because each cause of action improperly incorporates all prior allegations. (*See* ECF No. 1 at ¶¶ 58, 63 68, 73, 79, 86). This Court prefers to resolve disputes on the merits and is unconvinced that use of blanket incorporations prompt summary dismissal. As plead, the Court does not believe that the incorporations diminished notice, caused confusion, or prejudiced Defendant to a point prompting redress. Accordingly, Defendant's motion to dismiss in this regard is denied.

**E. The Motion for Leave to File a Sur-Reply**

Plaintiff filed a Motion for Leave to File Surreply. (ECF No. 22). "In general, parties are not permitted to file surreplies." *MTB Servs., Inc. v. Tuckman-Barbee Const. Co.*, No. CIV.A. RDB-12-02109, 2013 WL 1224484, at *6 (D. Md. Mar. 26, 2013) (citing Local Rule 105.2(a) (D. Md. 2011)). However, in its discretion, the Court may permit surreplies where "the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Marshall v. Capital View Mut. Homes*, No. CIV. RWT-12-3109, 2013 WL 3353752, at *2–3 (D. Md. July 2, 2013) (internal citations and quotations omitted). Nonetheless, even where

13

this discretion is exercised, "[s]urreplies are allowed only pursuant to a court order," and "[a] motion for leave to file a surreply may be denied when the matter addressed in the reply is not new." *Marshall*, 2013 WL 3353752, at *2–3 (internal citations and quotations omitted).

Here, Agropex's proposed surreply only includes additional analysis on a case concerning Defendant's argument that dismissal is appropriate because each cause of action incorporates all prior allegations. This basis for dismissal is denied, leaving the desired surreply unnecessary. Thus, the motion for leave will be denied.

**IV.     CONCLUSION**

For the foregoing reason, Defendant's Motion to Dismiss, (ECF No. 19), is **GRANTED in part** and **DENIED in part**. Counts II, V, VI, and VII are **DISMISSED** without prejudice and with leave to amend. Plaintiff's Motion for Leave to File Sur-reply, (ECF No. 22), is **DENIED**. A separate order shall follow.

Dated: July 23, 2019                              /s/
                                                  J. Mark Coulson
                                                  United States Magistrate Judge